IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| GEORGE T. SHELTON, | § § | |
| Plaintiff, | § § | |
| | § | CIVIL ACTION NO 1:22-CV-00157-H |
| v. | § § | |
| RANGER COLLEGE, | § § § | |
| Defendant. | § § | |

## PLAINTIFF'S AMENDED COMPLAINT AND JURY DEMAND

Plaintiff George T. Shelton a/k/a Todd Shelton (Mr. Shelton) brings this action for damages and other legal and equitable relief which flow from Defendant Ranger College's (Ranger College) unlawful discrimination in violation of the Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964) (Title VII); 42 U.S.C. § 1981 and Texas Commission on Human Rights Act (TCHRA), breach of contract and violations of procedural and substantive due process rights.

## PARTIES

1.  Mr. Shelton is an African American male citizen and resident of the United States residing in Tarrant County, Texas.

2.  Ranger College is a college district located in Eastland County, Texas. Ranger College may be served by delivering a copy of a summons and complaint to its president, vice-president or other officer at 1240 College Circle, Ranger, Texas 76470.

## JURISIDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331. Venue is proper in the Northern District of Texas pursuant to Title 28 U.S.C. §1391(b) and (c) because the unlawful practices described in this complaint occurred in the Abilene Division of the Northern District of Texas.

## FACTS

4. Ranger entered into a one-year contract with Mr. Shelton beginning June 1, 2020, and ending May 9, 2021. A complete and correct copy of the contract (the "Contract") is attached to this Complaint as Exhibit "A."

5. Under the contract, Ranger College ("Ranger") employed Mr. Shelton as Assistant Men's Basketball Coach/Academic Advisor and Dorm Supervisor

6. The Ranger – Shelton contract states that 'This Contract will terminate upon a determination by the Board of good cause, financial exigency, or a program change, in accordance with applicable law and Board policy, or upon the Employee's resignation at the end of a school year without penalty, pursuant to Chapter 21 of the Texas Education Code."

7. The Ranger – Shelton contract provides that "[a]ll disputes, claims, and/or causes of action arising under this contract shall be governed by the policies, general procedures, and due process procedures of Ranger College and the laws of the State of Texas…."

8. On September 18, 2020, the head of Ranger's math department Jessica Brown communicates staffing difficulties with three classes and that Mr. Shelton declines to a class

because his recruiting duties and responsibilities for fifty-two basketball players, it would be too stressful.

9. On October 5, 2020, Ranger's president Dr. William J. Campion ("Dr. Campion") has campus security escort Mr. Shelton to his office and suggests that if he is unwilling to teach a class he should resign.

10. Mr. Shelton tells Dr. Campion that he will to teach the class and on the same day Mr. Shelton communicates with Academic Dean about scheduling the class. that he is teaching a class and arranges a visit to Ranger's Stephenville campus to observe Dr.

11. The next day, October 6, Dr. Campion emails Mr. Shelton the following: "In checking out your story, these text messages say everything. I think it is best you resign and move on." Dr. Campion attaches text messages between Mr. Shelton and the head of the department in which he says he is not teaching a class because of his other duties.

13. Mr. Shelton immediately goes to Dr. Campion's office to make sure that he understands that the text messages predate his agreement to teach a class the day before.

14. Two days later on October 8, 2020, Dr. Campion has campus security again escort Mr. Shelton to his office at which time he tells Mr. Shelton that his employment with Ranger is ended and that must clear out by the end of the day.

15. Mr. Shelton asks Dr. Camion the reason he is being fired and Dr. Campion answers: "it's because of something you did when you first arrived on campus."

16. Ranger employees tell Mr. Shelton that Dr. Campion fired him because of the softball coach.

17. When Mr. Shelton first arrives on campus, he has a consensual sexual relationship with a white female coworker.

18. Ranger sends Mr. Shelton a letter dated January 6, 2021, that it has "dismissed a formal complaint of sexual harassment in which you were a party as Respondent."

19. Before sending the January 6 letter, Ranger does not notify Mr. Shelton he is named Respondent in a Title IX complaint nor interview ask Mr. Shelton any questions about such a complaint.

20. Ranger Policy Code DMAA – Term Contracts: Termination Mid-Contract reads as follows:

> Any employee may be dismissed for good cause before the completion of the term fixed in his or her contract. ***Before any employee is dismissed, the employee shall be given reasonable notice in writing*** of the proposed action and the grounds, set out in sufficient detail to fairly enable him or her to show any error that may exist. [Emphasis added].

21. Ranger claims Mr. Shelton is terminated because he refuses to teach a class in the Spring, which is untrue.

## COUNT I

**Section 1981 violation**

39. Mr. Shelton's claim for recover under Section 1981 is based upon 42 U.S.C. § 1981, which provides that all persons within the United States shall have the same right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens.

The law entitles an African American (black) person to equal opportunity and treatment in employment. Thus, when an employer acts adversely against a person who is African American because of that person's race, the law has been violated and the African American person may file suit and recover damages.

40. Ranger violated the federal statute by intentionally discriminating against Mr. Shelton by terminating his employment for having a consensual sexual relationship with a white woman - conduct that the white employee was not terminated for – and, by terminating Mr. Shelton's employment because he participated in an interracial relationship which is not good cause for termination and for which the white employee was not terminated, and for terminating Mr. Shelton's employment without due process of law because of Ranger's objection to interracial sexual relationships.

` 41. But for Mr. Shelton's race, African American, he would not have been terminated from his employment, or would not have been terminated when he was terminated.

42. As a direct result of Ranger's discrimination against Mr. Shelton, he has suffered damages in the form of lost wages, loss of earning capacity, mental suffering, embarrassment, inconvenience and attorney's fees.

## COUNT II

**Title VII**

43. Mr. Shelton incorporates by reference each and every allegation set out in paragraphs 1-42 above.

44. Ranger knew that the white female employee and Mr. Shelton had ended their relationship by mutual agreement the month prior to this termination.

45. Ranger treated Mr. Shelton differently than persons not of his race because it was motivated by his race, Black, and sex, male or because he is a black male in violation of Title VII and any other applicable provisions.

47. Mr. Shelton's termination was terminated by his race and sex in violation of Title VII.

48. By treating employees disparately than it treats white and female employees, Ranger violates Title VII which prohibits discrimination in the terms and conditions of employment based on sex or race, and sex and race.

49. By reason of this discrimination, Mr. Shelton suffered damages, including, but not limited to lost wages, mental anguish, inconvenience and other compensatory noneconomic damages.

## COUNT III

**Breach of Contract**

50. Mr. Shelton incorporates by reference each and every allegation set out in paragraphs 1-49 above.

51. Under the contract between the parties, Mr. Shelton had a contract for one yar which could not be terminated except for good cause.

52. Moreover, under the terms of the contract between the parties, Mr. Shelton was entitled to written notice of the reasons, if any, for the termination of his contract before the terms set forth therein.

53. In addition, under the terms of the contract between the parties, Mr. Shelton could not be terminated except by action of the Board of Trustees, and could not be terminated upon the whim of the college president.

54. Finally, under the terms of the contract between the parties, Mr. Shelton was entitled to a hearing to determine if good cause exists for termination of his contract before the terms set forth therein.

55. Ranger breached the contract between the parties by terminating Mr. Shelton for other than good cause, by not providing Mr. Shelton with notice of the reason for his termination, by allowing the president of the college to terminate Mr. Shelton without a finding by the Board that he should be terminated, and by not allowing Mr. Shelton a hearing to determine if reason existed for his termination.

56. By reason of Ranger's breach of the contract between the parties, Mr. Shelton has suffered damages in the form of benefit of the bargain for which he seeks recovery in this lawsuit.

57. Mr. Shelton is entitled to attorneys' fees, interest, and costs of court for services rendered in this cause, including trials and appeals.

## COUNT IV

**Deprivation of Procedural Due Process**

58. Mr. Shelton incorporates by reference the allegations in paragraphs 1 through 57 above.

59. Mr. Shelton had a constitutionally-protected property interest in his contractual employment with the Ranger.

60. Ranger deprived Mr. Shelton of his property interest by terminating his employment – without giving notice of providing adequate notice and an adequate hearing, in violation of the Due Process Clause of the Fourteenth Amendment.

61. As set forth above, the president of the college terminated Mr. Shelton without giving him a reason and without authorization of the Board,

62. Ranger ratified the termination even though it knew that its president he did not have authority to terminate Mr. Shelton's employment and that he had purportedly done so without notice and a hearing.

63. The process afforded to Mr. Shelton was nonexistent and did not constitute "due process" under the Constitution because:

   a. The notice of bases for termination was not provided to Mr. Shelton, and he was not affording a hearing.

   b. Ranger deprived Mr. Shelton of the right to confront and cross-examine witnesses by not affording him a hearing, d remaining under her employment contract.

64. Ranger was aware that its termination decision regarding Mr. Shelton was constitutionally deficient because they had access to legal advice and also aware of this by reason of the training and experience of its officers and directors.

65. Mr. Shelton's right to adequate notice and a meaningful opportunity to be heard were clearly established at the time he was deprived of due process and Ranger knew that its failure to adhere to its notice and hearing procedures failed to satisfy minimum due process and violated Mr. Shelton's constitutional rights.

66. In depriving Mr. Shelton of adequate procedural due process, Ranger acted under color of state law as a political subdivision of the State.

67. As a direct and proximate result of Ranger's failure to provide adequate procedural due process, Mr. Shelton incurred damages, including but not limited to, the loss of salary, lost employee benefits, diminished earnings capacity, lost career and business

opportunities, litigation expenses, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages.

68.     Ranger's deprivation of Mr. Shelton's property interest without adequate due process was reckless and callous to Mr. Shelton's constitutional rights.

## COUNT V.

**Violation of Substantive Due Process**

69.     Mr. Shelton incorporates by reference the allegations in paragraphs 1 through 68.

70.     Under the Due Process Clause of the Fourteenth Amendment, Mr. Shelton has the right to be free from arbitrary and capricious action and from governmental action not substantially related to a legitimate governmental interest.

71.     Under Texas law, the Board, as an entity, is vested with authority to manage the affairs of the Ranger.

72.     Pursuant to its authority, the Board contracted with Mr. Shelton to serve as coach and dorm supervisor for a term of one year unless terminated by actions of the Board.

73.     Contrary to Texas law and the terms of Mr. Shelton's contract, Ranger's president summarily terminated his employment illegally and for illegitimate discriminatory reasons.

74.     Ranger had no legitimate interest in the illegal actions of its president. To the contrary, Ranger had a legitimate interest only in the Board acting as an entity consistent with Texas law and Ranger policy.

75.     Mr. Shelton's termination was not substantially related to any legitimate governmental interest and was arbitrary and capricious.

76.     In depriving Mr. Shelton of substantive due process, Ranger acted under color of

state law as a political subdivision.

77. As a direct and proximate result of Ranger's arbitrary, capnc1ous, and illegitimate termination of Mr. Shelton's employment, Mr. Shelton incurred damages, including but not limited to, the loss of salary, lost employee benefits, diminished earnings capacity, lost career and business opportunities, litigation expenses, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages.

78. Ranger's termination of Mr. Shelton's employment was arbitrary, capricious, and illegitimate.

## JURY DEMAND

79. Mr. Shelton seeks a trial by jury on all causes of action and defenses alleged in this matter which may be properly tried to a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Shelton requests that Ranger answer and that on final trial, Mr. Shelton have judgment against Ranger for economic and compensatory damages, attorney's fees and expert fees, costs of suit, and interest as provided by law and any other and further to which he may be entitled. Mr. Shelton also prays for injunctive and equitable relief which includes, but is not limited to, requiring Ranger provide training to its officers, managers and supervisors and training to all of its employees on complying with EEO laws and its own EEO policies so that the country moves forward in ending intentional and systemic race and sex discrimination.

Dated: October 24, 2022.

Respectfully submitted,

*s/ N. Sue Allen*
N. Sue Allen
Texas Bar No. 00791992
1345 FM 1187 E, Suite 113
Mansfield, Texas 76133
E-Mail: sue@sueallenlaw.com
Tel.: (817) 926-5005
Fax.: (817) 926-5165