IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| GEORGE T. SHELTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 1:22-CV-157-H |
| v. | § | |
| | § | |
| RANGER COLLEGE, | § | |
| | § | |
| | § | |
| Defendant. | § | |

_____

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**
_____

N. Sue Allen
Texas Bar No. 00791992
1345 FM 1187, Suite 113
Mansfield, Texas 76063
Telephone: (817) 926-5005
Facsimile: (817) 926-5165
E-Mail Address: sue@sueallenlaw.com

Plaintiff George Todd Shelton moves for partial summary judgment on his breach of contract and procedure and substantive due process claims. In support, Shelton states as follows:

## I.    NATURE OF THE CASE

1.     This is a breach of contract, denial of due process and employment discrimination case. Shelton, an African American male, asserts that Ranger College, his former employer, fired him because he had an intimate interracial relationship with a Caucasian female. Ranger did not give Shelton notice of the proposed termination of his contract, and did not give him the opportunity to be heard which rights are guaranteed under the contract as well as by law.[1]

2.     Ranger appears to argue that Shelton was a probationary employee who could be fired for any or no reason, or, that he was fired for good cause with appropriate notice.

## II.    SUMMARY OF THE ARGUMENT

2.     The undisputed facts establish the existence of a contract between Ranger and Shelton, the terms of that contract, Ranger's breach of that contract, and that damage from the breach. The summary judgment evidence establishes that Ranger did not give Shelton notice of the proposed mid-contract termination of his contract and did not afford Shelton with a hearing that he was entitled to under his contract and the law which deprived him of his property interest in his job without affording him procedural or substantive due process.

Shelton's damages are the only issue that needs to be decided by a trial. Shelton

---

[1] *See generally* Plaintiff's Amended Complaint (Docket Entry #4)

is entitled to judgment as a matter of law on his breach of contract and due process claims.

### III.   UNDISPUTED FACTS

1. Ranger entered into a contract with the plaintiff George Todd Shelton employing him during the 2020-2021 academic year beginning June 1, 2020, and ending on May 9, 2021. App'x 3, para. 4, Doc. 7, App'x 13, para. 4; Doc. 7.

2. A true and correct copy of the Ranger/Shelton Employment Contract 2020-2021 (the "Contract") is Bate-stamped Ranger College/Shelton 0002-0003.  App'x 37.

3. The Contract provides for termination before the expiration of its term:

> Any employee may be dismissed ***for good cause*** before the completion of the term fixed in his or her contract.  A contract employee may be non-renewed at the end of their contract for any or no reason.  This Contract will terminate upon a determination by the Board of good cause, financial exigency, or a program change, in accordance with applicable law and Board policy, or upon the Employee's resignation at the end of a school year without penalty, pursuant to Chapter 21 of the Texas Education Code. [Emphasis added]

App'x 37.

3. The Contract further provides that the Contract is to be governed by Ranger's policies and procedures:

> It is understood and agreed … (1) that all disputes, claims, and/or causes of action arising under this contract  shall be governed by the policies, general procedures, and due process procedures of Ranger College and the laws of the State of Texas…."

App'x, 37.

4. Ranger's Policy Code DMAA – Term Contract:  Termination Mid-Contract provides:

> Any employee may be dismissed for good cause before the completion of the term fixed in his or her contract. ***Before any employee is dismissed, the employee shall be given reasonable notice in writing*** of the proposed action and the grounds, set out in sufficient detail to fairly enable him or her to show any error that may exist.

[Emphasis added].

App'x 5, para. 20; Doc. 7, App's 14, para. 20.

5.     In September 2020, Jessica Brown, the division chair of the math department, communicated by text message with Shelton about his willingness to teach a class for the Spring Semester that would begin in January 2021. App.21, Deposition of Jessica Brown (Brown Deposition), page 31, lines 13-20; App. 28, Shelton Declaration, para. 5.

6.     Shelton communicated to Ms. Brown that he was hesitant to agree to teach the math class because he was nervous that he would not have the time to commit to teaching the class because of his coaching duties. App. 22-23, Brown Deposition, page 39, lines 20-25; page 40, lines 1-3; App. 28, Shelton Declaration, para. 5. Shelton told Ms. Brown that would pray about it and later agreed to teach the class and notified Ms. Brown that he would teach the class.   App. 26, Brown Deposition, page 50, lines 12-15; App. 28, Shelton Declaration, para. 7.

7.     When Shelton agreed teach the math class, Ms. Brown added the class to the Spring Semester schedule filling it.   App. 24, Brown Deposition, page 44, lines 16-21; page 50, lines 16-17.

8.     When Shelton agreed to teach the class, he asked Ms. Brown if he could proctor her class to observe and learn some of her methods which she agreed he could do.  App'x 24-25, Brown Deposition, page 44, lines 22-25; page 45, lines 1-5; App'x. 28,

Shelton Declaration, para. 7.

8. On the morning of Tuesday, October 6, 2020, Ranger's security officers came to the gymnasium and informed Shelton that they were to escort him to Dr. Campion's office. App. 28, Shelton Declaration, para 8.

9. When Shelton met Dr. Campion in his office on the morning of October 6, Dr. Campion stated that Shelton resign because was not willing to teach a math class. Shelton informed Dr. Campion that he was willing to teach the math class and that he already agreed to teach the class. When Shelton left Dr. Campion's office, he believed that he had made it clear to Dr. Campion that Shelton had agreed to teach the math class in the Spring Semester. App. 28, Shelton Declaration, para. 8.

10. Later in the afternoon of Tuesday, October 6, Dr. Campion sends an email to in which Dr. Campion wrote: "In checking out your story, these text messages say everything. I think its best you resign and move on." Dr. Campion attached a copy of the September 2020, text message exchange between Ms. Brown and Shelton to this email. App. 28-29, Shelton Declaration, para 9. App'x 31, Bate-stamped Ranger College/Shelton 0025; 0004-0006; Email from William Campion with text messages attachment.

11. Because Shelton concluded that Dr. Campion was under a misimpression that the text messages exchanged in September were recent, Shelton again goes to Dr. Campion and tells him that he would be teaching the math class in the upcoming Spring Semester. App'x 29, Shelton Declaration, para. 10

12. Two days later on October 8, Ranger Security again come to Shelton to in the gymnasium and tell him that they are to escort him to Dr. Campion's office. In this

meeting with Dr. Campion, he tells Shelton that he either resigns or he will be fired. App'x 29, Shelton Declaration, para. 11.

13. Shelton refuses to resign and Dr. Campion tells Shelton that his employment contract is terminated and he should leave the campus immediately. App'x 29, Shelton Declaration, paras. 12-13

14. In response to Shelton's question about why he is being fired, Dr. Campion does not give him a reason, but tells him that he should ask his lawyer. App'x 29, Shelton Affidavit, para. 14.

15. Ranger does not give Shelton written notice of the proposed mid-term termination of his contract. App'x. 30, Shelton Declaration, para. 17

16. Ranger does not afford Shelton a hearing or opportunity to be heard as to error that may exist in the termination of his contract mid-term. App'x. 30, Shelton Declaration, paras. 18-20.

17. Shelton had a constitutionally-protected property interest in his contract of employment with Ranger. App'x 8, Doc. 7, paragraph 59; App'x 15, para. 59.

18. Ranger states it terminated Shelton's contract was terminated because he refused to teach the math class. App'x 36, Ranger College EEOC Position Paper bate-stamped Ranger College/Shelton 0003.

## IV. ARGUMENTS AND AUTHORITIES

**A. The Ranger College/Shelton employment contract is unambiguous**.

Deciding whether a contract is ambiguous is a question of law for the court. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). A contract is unambiguous if it can be given a definite or certain legal meaning. *Columbia Gas Transmission Corp. v. New*

*Ulm Gas, Ltd.*, 940 S.W.2d 587,589 (Tex. 1996). *J.M. Davidson, Inc. v. Webster*, 128 S.W .3d 223, 229 (Tex. 2003). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962); *Citizens Nat'l Bank v. Tex. & P. Ry. Co.,* 150 S.W.2d 1003, 1006 (Tex. 1941).

The language in the one-page Ranger College/Shelton is clear and unambiguous in that it i) requires good cause to terminate Shelton's contract before the expiration of its term and ii) entitles Shelton to Ranger's standard personnel policies and procedures, which are incorporated by reference, including the right to be terminated only for good cause and the right to notice and an opportunity to be heard before the contract is terminated.   App'x.37, Ranger/Shelton contract.

### B.  Ranger breached the contract

Ranger College terminated Shelton's contract because he refused accept an teaching assignment for a math class to be offered for the Spring Semester in January 2021. App'x 36, Ranger College EEOC Position Paper bate-stamped Ranger College/Shelton 0003. However, Shelton expressed concern about the time commitment of teaching because of his other responsibilities, but never refused to teach. App. 22-23, Brown Deposition, 39:20-25; 40:1-3; App. 28, Shelton Declaration, ¶5. The undisputed evidence establishes Shelton later agreed to teach the math class and notified both math division chair and the president of the college he would do so. Shelton is entitled to judgment on his breach of contract claim because he was not fired for good cause or even for the reason stated by Ranger.  Shelton agreed to teach the math class in the Spring Semester.

Under the contract, Shelton was entitled policies and procedures of Ranger which included the right to notice and a hearing before his contract was terminated. Appx. 39. Shelton received neither when he was summarily terminated by Campion.

### C. Ranger deprived Shelton Procedural Due Process

To state a claim based on termination of employment without affording procedural due process, [the plaintiff] must allege that (1) she has a property interest in her employment sufficient to entitle her to due process protection, and (2) she was terminated without receiving the due process protections to which she was entitled." *LeBeouf v. Manning*, 575 Fed.Appx. 374, 376 (5th Cir.2014) citing *McDonald v. City of Corinth, Tex.,* 102 F.3d 152, 155–56 (5th Cir.1996). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Crowe v. Smith*, 151 F.3d 217, 230–31 (5th Cir.1998). The essential requirements of due process are notice and an opportunity to respond. *See* Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267, 1281 (1975).

Shelton had a constitutionally-protected property interest in his contract of employment with Ranger. App'x 8, Doc. 7, paragraph 59; App'x 15, para. 59, and thus, the right to notice and an opportunity to be heard before being deprived of that right. Shelton's summary judgment evidence stablishes that he was not provided with notice or the opportunity to be heard. It is fundamental that due process requires that an individual be given an opportunity for a hearing before he is deprived of a significant property interest. As the United States Supreme Court in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542 (1985) put it: "We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an

opportunity for a hearing before he is deprived of any significant property interest.' *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971); *see Bell v. Burson*, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). By summarily terminating Shelton on October 8, 2020, with no notice and no opportunity to be heard, Ranger violated Shelton's procedural due process rights.

### D. Ranger deprived Shelton of Substantive Due Process

To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that she had a property interest/right in her employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." Id., (*quoting* Moulton v. City of Beaumont, 991 F.2d 227, 230 (5th Cir.1993)). Ranger concedes that Shelton had a property interest in his contract of employment. App'x 8, Doc. 7, paragraph 59; App'x 15, para. 59. The summary judgment evidence shows that his deprivation of that interest was arbitrary and capricious.

Good cause for discharging an employee has been defined as the employee's failure to perform the duties in the scope of employment that a person of ordinary prudence would have done under the same or similar circumstances." *Norris v. Housing Authority of City of Galveston*, 980 F.Supp. 885, 894 (S.D.Tex. 1997). "An employee's actions constitute good cause for discharge if they are inconsistent with the continued existence of the employer/employee relationship." Id. "Finally, there is an implied obligation on the part of an employee to do no act which has a tendency to injure the employer's business or financial interests, and a breach of this obligation will justify the employer in discharging the employee from his services." *Norris*, 980 F.Supp. at 895; See *Watts v. St. Mary's Hall, Inc.,* 662 S.W.2d 55, 58 (Tex.App.—San Antonio 1983, writ

ref'd n.r.e.); *Advance Ross Electronics Corp. v. Green,* 624 S.W.2d 316, 318 (Tex.App.—Tyler 1981, no writ); *Turner v. Byers*, 562 S.W.2d 507, 510 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.).

Whether good cause exists for discharging an employee is typically a question of fact. However, where the facts are undisputed, the question of good cause becomes one of law." Norris, 980 F.Supp. at 895 (emphasis added); See, *Lee–Wright, Inc. v. Hall*, 840 S.W.2d 572, 580 (Tex.App.—Houston [1st Dist.] 1992, no writ). Here, there was no good cause to terminate Shelton's contract as a matter of law. One, Shelton agreed to teach a math class in the Spring, and two, Shelton hesitancy about teaching the class did not injure or cause any harm to Ranger. By terminating Shelton for other than good cause, Ranger violated his right to substantive due process.

## CONCLUSION

The summary judgment evidence establishes that Shelton is entitled to judgment on his claims for breach of contract and his claims that Ranger denied him procedure and substantive due process. The remaining issues are of damages.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing instrument was served August 31, 2023, to all counsel of record via the Court's ECF filing system.

s/  N. Sue Allen<br>
N. Sue Allen